

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOLLY VAN VOAST,

Plaintiff,

-against-

THE CITY OF NEW YORK; NEW YORK CITY
POLICE COMMISSIONER RAYMOND W.
KELLY; NEW YORK CITY POLICE OFFICER
GRAU, SHIELD # 907046; NEW YORK CITY
POLICE OFFICER HERBERT; NEW YORK
CITY POLICE OFFICER BENNETT, SHIELD #
6592; METROPOLITAN TRANSIT
AUTHORITY POLICE OFFICER
MATRISCIANO, SHIELD # 86806; NEW YORK
CITY POLICE OFFICER PAUL KENNEDY,
SHIELD # 9178; JOHN/JANE DOES # 1-14
(NYPD POLICE OFFICERS); JOHN DOE # 15
(MTA POLICE OFFICER); RICHARD/JANE
ROES # 1-10 (NYPD SUPERVISORY AND
TRAINING PERSONNEL),

Defendants

13 CIV 3280

13 Civ. _____

ECF Case

**COMPLAINT**

**JURY DEMAND**



Plaintiff Holly Van Voast, by and through her attorneys, Emery Celli Brinckerhoff &

Abady LLP and the Law Office of Ronald L. Kuby, for her Complaint alleges as follows:

## PRELIMINARY STATEMENT

1.      More than two decades ago, in 1992, the New York State Court of Appeals held

that it is not illegal for women in New York State to expose their breasts in public. *People v.*

*Santorelli*, 80 N.Y.2d 875 (1992) (finding that New York Penal Law § 245.01 did not apply to

women who exposed their breasts in a public park).

2.      Plaintiff Holly Van Voast is an artist and a long-time resident of New York City.

Often appearing in the role and dress of Harvey Van Toast, the "topless paparazzo," and wearing

a painted-on moustache and blond Marilyn Monroe-esque hairdo, plaintiff appears around New York City, exercising her right to be topless anywhere a man is permitted to be topless.

3.      Notwithstanding the clear command of *Santorelli*, the New York City Police Department ("NYPD") has stopped, detained, harassed, arrested, summonsed, charged and/or prosecuted plaintiff on dozens of occasions – solely for exercising her right to be to be topless in public in New York City.  The NYPD has repeatedly charged and arrested Ms. Van Voast for appearing topless in public although she has committed no crime.

4.      On multiple occasions when plaintiff was peacefully going about her business in New York City, the NYPD has wrongfully detained and charged Ms. Van Voast, either with "Indecent Exposure" pursuant to New York Penal Law § 245.01, or with a host of other sham charges.  The NYPD has charged Ms. Van Voast on these occasions not because she was doing anything illegal, but for the impermissible and unconstitutional purpose of penalizing and deterring her from being topless in public.

5.      After plaintiff was stopped, harassed, and charged on more than a dozen occasions because she was topless, the NYPD finally issued a FINEST message on February 7, 2013 instructing officers that no "enforcement action" should be taken against "male or female individuals who are simply appearing in public unclothed above their waist."

6.      This is a civil rights action against the City of New York, the NYPD and individual defendants for repeatedly stopping, confining, and charging plaintiff on multiple occasions with various pretextual "crimes," although she has been acting lawfully – while topless.

## PARTIES

7.      Plaintiff Holly Van Voast is a citizen of the United States and, at all times relevant to this complaint, was present in New York, New York.

8.      Defendant City of New York ("City") is a municipality organized and existing under the laws of the State of New York.  At all relevant times, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including the defendants named in this complaint.  In addition, at all relevant times, the City was responsible for enforcing NYPD rules, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

9.      At all relevant times, defendant Raymond W. Kelly was the Police Commissioner of the City of New York and, as such, made and enforced NYPD policy.  At all relevant times, defendant Kelly acted in his capacity as agent, servant, and employee of defendant City, within the scope of his employment as such, and under color of state law.

10.     At all relevant times, defendant NYPD Officer Grau, Shield # 907046, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such.  On information and belief, on October 23, 2011, defendant Grau charged Ms. Van Voast without cause because she was lawfully topless.

11.     At all relevant times, defendant NYPD Officer Herbert, Command Code 868, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such.  On information and belief, on April 29, 2012, defendant Herbert charged Ms. Van Voast without cause because she was lawfully topless.

12.     At all relevant times, defendant NYPD Officer William Bennett, Shield # 6592, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such.  On information and belief, on May 7, 2012, defendant Bennett charged Ms. Van Voast without cause because she was lawfully topless.

13.     At all relevant times, defendant MTA Officer Matrisciano, Shield # 86806, was a Metropolitan Transit Authority Police Department ("MTAPD") police officer acting in the capacity of agent, servant, and employee of the Metropolitan Transit Authority, and within the scope of his employment as such.  On information and belief, on June 3, 2012, defendant Matrisciano charged Ms. Van Voast without cause because she was lawfully topless.

14.     At all relevant times, defendant NYPD Officer Paul Kennedy, Shield # 9178, was an NYPD officer acting in the capacity of agent, servant, and employee of defendant City, and within the scope of his employment as such.  On information and belief, on June 7, 2012, defendant Kennedy charged Ms. Van Voast without cause because she was lawfully topless.

15.   At all relevant times, defendants "Jane/John Does # 1 – 14" were NYPD officers who, acting in the capacity of agents, servants, and employees of defendant City and within the scope of their employment as such, a) arrested Ms. Van Voast, b) issued summonses to Ms. Van Voast, c) seized Ms. Van Voast without reasonable suspicion or probable cause, d) instructed other officers to take one or more of the actions listed in a – c above, or e) failed to prevent others from taking any action listed in letters a – d above.  Plaintiff is unable to determine the names of these NYPD officers at this time and thus sues them under a fictitious designation.

16.   At all relevant times, defendant "John Doe # 15" was an MTAPD officer who, acting in the capacity of agent, servant, and employee of the MTA and within the scope of his employment as such, a) arrested Ms. Van Voast, b) issued summonses to Ms. Van Voast, c)

4

seized Ms. Van Voast without reasonable suspicion or probable cause, d) instructed other officers to take one or more of the actions listed in a – c above, or e) failed to prevent others from taking any action listed in letters a – d above. Plaintiff is unable to determine the names of this MTAPD officer at this time and thus sues him under a fictitious designation.

17.    At all times relevant hereto, "Richard Roes # 1-10," acting in their capacity of agents servants and employees of defendant City and with the scope of their employment as such, were training, supervisory and policy making personnel within the NYPD who implemented, enforced, perpetuated and/or allowed the unconstitutional conduct that is the subject of this action. Plaintiff is unable to determine the names of these supervisory defendants at this time and thus sues them under fictitious designations.

18.    All NYPD supervisory defendants, including defendant Kelly, are referred to collectively herein as the "Supervisory Defendants."

19.    Defendants Grau, Herbert, Bennett, Kennedy, and John Does # 1–14 are referred to collectively as the "Police Officer Defendants" herein.

20.    All defendants and each of them, separately and in concert, engaged in acts and/or omissions that constituted deprivations of plaintiff's constitutional rights. Though these acts were carried out under color of law, they had no justification or excuse, and were instead gratuitous, illegal, improper, and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

## JURISDICTION AND VENUE

21.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and New York state common law.

5

22.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

23.     A substantial part of the acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

**JURY DEMAND**

24.     Plaintiff demands trial by jury in this action.

**FACTUAL ALLEGATIONS**

25.     Plaintiff Holly Van Voast is a 46-year old woman.  In support of personal, artistic and gender freedom, and in an exercise of her right to be topless in public, Ms. Van Voast regularly appears in public places in New York City topless, naked from the waist up.

26.     Plaintiff uses a unique blend of public appearance, comedy, photojournalism, and videography to express her views about personal freedom, challenge stigmas against public nudity, and protest the improper criminalization of women's nudity.

27.     When she appears topless in public throughout New York City, plaintiff often wears a hat and a painted-on moustache, carries a camera, and presents herself as a gender-bending character, "Harvey Van Toast, Topless Paparazzo."  Plaintiff collects the reactions of the public and recognized celebrities on her video camera, filming the responses of different New Yorkers to her character and her topless nudity.

28.     Through her own public appearance and nudity, plaintiff also seeks to bring attention to the art and appearances of other performers and to a broad artistic community of punk drag in New York City including Krystal Something Something, Little Kimchi, Thorgy Thor, Azraea, Leo Politan, Mocha Lite, Misty Meaner, Charmin Ultra, Whiskey Dixie, Mary Jo Cameltoe, Macy Rodman, Princess Mickey Jager, Duchess Tickles, Miz Jade, Ladyy Havokk,

6

Dolly Dharma, Veruca La'Piranha, Heidi Glum, Cherry Poppins, Horrorchata, and Victoria Viktoria.

29.     More than two decades ago, in 1992, the New York State Court of Appeals held that it is not illegal for women in New York State to bare their breasts in public.  *People v. Santorelli*, 80 N.Y.2d 875 (1992).

30.     Since this decision, it has not been a crime, offense, or violation in New York State for women to appear topless in public for non-commercial purposes, such as the artistic, political, and social reasons for which plaintiff chooses to go topless in public.

31.     According to published reports, New York City Police Department Deputy Commissioner of Public Information Paul Browne stated in June 2011: "The state's highest court established long ago that women have the same right as men to appear topless in public."

32.     Since Commissioner Browne's public acknowledgement of the right to be topless, plaintiff has been stopped, detained, charged, arrested and/or harassed by the NYPD on dozens of occasions, solely because she was topless.

33.     On every occasion where plaintiff encounters law enforcement officers who question her choice to be topless in public, she makes good faith efforts to cooperate by explaining the legality of her conduct, including by citing to the *Santorelli* decision.  At all times, plaintiff's behavior and demeanor when interacting with law enforcement is calm, reasonable, and respectful.

34.     Despite plaintiff's compliance with all relevant State and City laws, she has been repeatedly charged with allegedly illegal conduct while she is topless.

**August 2011 Incident**

35.     In or about August 2011, plaintiff was in the Oyster Bar in Grand Central Station. Plaintiff was topless.

36.     Plaintiff exited the Oyster Bar and walked into Grand Central Station.

37.     After plaintiff had exited Grand Central Station and was standing on the sidewalk outside, defendants John Doe # 1 and John Doe # 2 stopped and detained plaintiff.  Defendant John Doe # 1 stated to plaintiff that she needed a "permit" in order to appear topless in Grand Central.

38.     Defendant John Doe # 1 charged plaintiff with "Exposure of a Person," in violation of New York Penal Law § 245.01.

39.     There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

40.     On October 12, 2011, plaintiff was granted an Adjournment in Contemplation of Dismissal ("ACD") for the charge brought against her in connection with the August 2011 incident.

**October 23, 2011 Incident**

41.     On October 23, 2011, plaintiff was walking down the sidewalk near Driggs Avenue and South 3rd Street in Williamsburg, Brooklyn.  Plaintiff was topless.

42.     Defendants Police Officer Grau and John Doe # 3 stopped and detained Ms. Van Voast, stating to her: "You have to put your top on."

43.     Plaintiff politely informed defendants Police Officer Grau and John Doe # 3 that she had a legal right to be topless in public in New York.

8

44.     A number of additional NYPD police officers in two marked police cars then responded to the location where plaintiff was detained, and conferred with defendants Police Officer Grau and John Doe # 3.  Plaintiff remained detained while the NYPD officers conferred for an extended period of time in the street.

45.     Defendants Police Officer Grau and John Doe # 3 transported plaintiff to the police precinct, where she was held in a cell for an extended period of time.

46.     Defendant Police Officer Grau charged plaintiff with "Exposure of a Person," in violation of New York Penal Law § 245.01.

47.     There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

48.     After an extended period of time in the cell at the precinct, plaintiff was released from police custody.

49.     Prior to the court appearance date of January 19, 2012, the criminal charge against plaintiff arising from the October 23, 2011 incident was dismissed in plaintiff's favor.

**March 14, 2012 Incident**

50.     On March 14, 2012, plaintiff was standing on 81st Street near Madison Avenue in Manhattan, in front of the P.S. 6 elementary school.  Plaintiff was topless.

51.     Plaintiff chose that location to stand specifically to express her opinion that the sight of women's breasts is not dangerous to children, and that claims of "protecting" children from toplessness were misplaced.

52.     Defendants John Doe # 4 and John Doe # 5 stopped and detained plaintiff, placed her in a police car, and drove her around for a period of time.

53.     While plaintiff was detained in the police car, defendants John Doe # 4 and John Doe # 5 stopped the car, exited the car, and conferred with other NYPD police officers.

54.     There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

55.     Defendants John Doe # 4 and John Doe # 5 then transported plaintiff to the New York Presbyterian Hospital for psychiatric evaluation.

56.     Plaintiff was detained in the psychiatric hospital against her will for approximately six days.

**April 29, 2012 Incident**

57.     On April 29, 2012, plaintiff was riding the subway in Brooklyn on the A train line.  Plaintiff was topless.

58.     When the train arrived at the High Street station, defendants Police Officer Herbert and John Doe # 6 entered the train, detained plaintiff, and forcibly removed her from the train.

59.     Plaintiff politely informed defendants Police Officer Herbert and John Doe # 6 that she had a legal right to be topless in New York.

60.     Defendants Police Officer Herbert and John Doe # 6 threatened to take plaintiff for admission to a psychiatric hospital.

61.     Defendants Police Officer Herbert and John Doe # 6 transported plaintiff to the police precinct, where defendant Police Officer Herbert charged her with a violation of New York Penal Law § 240.25(7) ("Disorderly conduct").

62.     There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

63.     After an extended period of time in that precinct, plaintiff was released from police custody.

64.     Prior to the court appearance date of July 27, 2012, the criminal charge against plaintiff arising from the April 29, 2012 incident was dismissed in plaintiff's favor.

**May 7, 2012 Incident**

65.     On May 7, 2012, plaintiff was riding the subway in Manhattan on the D train line. Plaintiff was topless.

66.     When the train arrived at the 125th Street station, plaintiff exited the train. Defendants Police Officer William Bennett and John Doe # 7 immediately detained plaintiff, and handcuffed her, instructing her that she had to put on a shirt.

67.     Plaintiff politely and repeatedly informed the responding police officers that she was not violating the law by peacefully riding on the train while topless.

68.     When plaintiff politely declined to put on a shirt and informed defendants that she had a legal right to be topless in New York, defendants Police Officer William Bennett, and John Doe # 7 transported plaintiff to the 26th Precinct.

69.     Defendant Police Officer William Bennett charged plaintiff with a violation of New York Penal Law § 242.20(7) and with two violations of the New York City Transit Authority Rules.

11

70.     There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

71.     Plaintiff was detained at the precinct for an extended period of time in a cell.

72.     Plaintiff was finger-printed and photographed at the police precinct.

73.     After an extended period of time in that precinct, plaintiff was released from police custody.

74.     On February 13, 2012, plaintiff was granted an Adjournment in Contemplation of Dismissal of all charges for which she was arrested on May 7, 2012.

**May 20, 2012 Incident**

75.     On May 20, 2012, plaintiff was walking on the Mosholu Parkway in the Bronx. The annual Bronx Day Parade was in progress.  Plaintiff was topless.

76.     Defendants John Doe # 8 and John Doe # 9 stopped plaintiff, handcuffed her, and detained her in an ambulance for an extended period of time.

77.     Plaintiff politely informed defendants John Doe # 8 and John Doe # 9 that she had a legal right to be topless in New York.

78.     Defendants John Doe # 8 and John Doe # 9 then transported plaintiff via ambulance to Montefiore Hospital ("Montefiore") for psychiatric evaluation.

79.     While at Montefiore, defendants John Doe # 8 and John Doe # 9 handcuffed plaintiff to a hospital bed for an extended period of time.

80.     While plaintiff was detained at Montefiore, a copy of the New York Post for that day was being circulated, which included an article about a legal topless appearance and protest by another woman in Union Square the previous day.

81.     On information and belief, defendants John Doe # 8 and John Doe # 9 were instructed to detain plaintiff at Montefiore for an extended period of time to prevent plaintiff from returning to the Bronx Day Parade.

82.     There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

83.     After being detained for an extended period of time at Montefiore, plaintiff was released without any formal criminal charges.

**June 3, 2012 Incident**

84.     On June 3, 2012, plaintiff was riding the Metro-North train from New Haven, approaching New York City.  Plaintiff was topless.

85.     When the train arrived at Grand Central Station, defendant MTAPD Police Officer Matrisciano and John Doe # 15 entered the train, stopped and detained plaintiff, and forcibly removed her from the train.

86.     Defendants MTA Police Officer Matrisciano and John Doe # 15 transported plaintiff to the police precinct located in Grand Central Station, and held her in a detention cell in the precinct for an extended period of time.

87.     Defendant MTA Police Officer Matrisciano charged plaintiff with "Improper Hygiene" pursuant to 21 N.Y.C.R.R. § 1085(7).

88.     There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

89.     After an extended period of time in that precinct, plaintiff was released from police custody.

90.     On August 15, 2012, the charge against plaintiff arising from the June 3, 2012 incident was dismissed in plaintiff's favor.

91.     This action has been commenced within one year and ninety days after the criminal charges against plaintiff were dismissed in her favor.

**June 7, 2012 Incident**

92.     On June 7, 2012, plaintiff was riding the subway on the L train line.  Plaintiff was topless.

93.     When the train arrived at the Union Square station, defendants Police Officer Paul Kennedy and John Doe # 10 stopped the train, forcibly removed plaintiff from the train, and transported her to the police precinct.

94.     Plaintiff politely informed defendants that she was not violating any law by riding the subway topless.

95.     Defendants Police Officer Kennedy and John Doe # 10 detained plaintiff at the precinct for an extended period of time.

96.     While at the police precinct, plaintiff was handcuffed, fingerprinted, and photographed for a "mugshot".

97.      Defendants Police Officer Kennedy and John Doe # 10 then transported plaintiff to the Central Booking Facility at 100 Centre Street where she was also held for an extended period of time until approximately 1:00am on June 8, 2012.

98.     Defendant Police Officer Kennedy charged plaintiff with disorderly conduct under New York Penal Law § 242.20(7) and with three violations of the New York City Transit Authority Rules.

99.     There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

100.     After an extended period of time at Central Booking, plaintiff was released from police custody.

101.     On February 13, 2012, plaintiff was granted an Adjournment in Contemplation of Dismissal ("ACD") of all charges for which she was charged on June 7, 2012.

**July 7, 2012 Incident**

102.     On July 7, 2012, plaintiff was standing on the sidewalk on 56th Street near Broadway in Manhattan, in front of a "Hooters" establishment.  Plaintiff was topless.

103.     On that date, plaintiff was commemorating the 20th anniversary of the *Santorelli* decision which protects the right of women in New York State to be topless in public.

104.     At approximately 8pm, defendants John Doe # 11 and John Doe # 12 arrived at the location, stopped plaintiff, and detained her, stating "You have to put your top on."

105.     When plaintiff politely declined to put her shirt on and responded that she had the legal right to be topless, and provided defendants with written information about the *Santorelli* decision establishing her legal right to be topless, defendants John Doe # 11 and John Doe # 12 threatened to take plaintiff to a psychiatric hospital.

106.     Defendants then placed plaintiff in an ambulance for an extended period of time.

15

107.    There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

108.    Defendants John Doe # 11 and John Doe # 12 then transported plaintiff to St. Luke's-Roosevelt Hospital for psychiatric evaluation.

109.    After being detained for an extended period of time at St. Luke's-Roosevelt Hospital, plaintiff was released without formal charges.

**August 24, 2012 Incident**

110.    On August 24, 2012, plaintiff was riding the Staten Island Ferry.  Plaintiff was topless.

111.    Defendants John Doe # 13 and # 14 stopped plaintiff, detained her, handcuffed her, and transported her to the police precinct in the Staten Island Ferry Terminal, where defendants charged her with "Exposure of a Person," in violation of New York Penal Law § 245.01.

112.    There was no reasonable basis or probable cause to suspect plaintiff was engaged in any unlawful activity.  At no time during the events described above did the defendants have probable cause to stop, charge, or arrest plaintiff.

113.    After some period of time, plaintiff was released from police custody.

114.    Prior to the court appearance date, the criminal charge against plaintiff arising from the August 24, 2012 incident was dismissed in plaintiff's favor.

115.    This action has been commenced within one year and ninety days after the criminal charges against plaintiff were dismissed in her favor.

16

**Allegations Pertaining to All Incident Alleged Above**

116.    In addition to these incidents alleged above, plaintiff has been regularly harassed, stopped, and detained by NYPD officers while she is topless in public and engaged in no unlawful behavior.  NYPD officers have frequently instructed plaintiff that she is required to wear a shirt in public.  NYPD officers have also frequently told plaintiff that her behavior is morally wrong because children should not see breasts in public.

117.    NYPD officers have also frequently threatened plaintiff that they would take her to a psychiatric hospital, called EMS, and held her in ambulances against her will – while she is topless in public and engaged in no unlawful behavior.

118.    Plaintiff has been subjected to repeated forced visits to psychiatric hospitals by the NYPD, again solely because she exercises her right to appear topless in public.

119.    These numerous charges, detentions, arrests, and other harassment have diminished plaintiff's ability to lawfully go topless in New York City.  On multiple occasions, plaintiff has chosen to forgo going topless rather than risk an encounter with police officers.

120.    As a result of defendants' conduct described above, including stopping, restraining, falsely arresting, falsely imprisoning, and maliciously prosecuting plaintiff, plaintiff suffered serious emotional injury, forced psychiatric evaluations and hospitalizations, pain and suffering, emotional distress, and mental anguish.

121.    The stops, arrests, detentions, and prosecutions of plaintiff lacked probable cause, and defendants acted maliciously, wantonly, willfully, recklessly, falsely, and in bad faith. Defendants acted in wanton and reckless disregard for the rights of plaintiff.

122.    Within ninety days after the events alleged in this Complaint occurred on August 24, 2012, a written notice of claim sworn by plaintiff, was served upon defendants at the

17

Comptroller's Office at 1 Centre Street, New York, New York.  At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.  This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

**The NYPD's February 7, 2013 FINEST Message**

123.    On February 7, 2013, by authority of the Chief of Department, the NYPD issued a FINEST message # 1435191 to all commands.

124.    FINEST message # 1435191 instructed police officers that, after consultation with the New York City Law Department, "the Department shall not enforce any section of law, including Penal Law Sections 245.00 (Public Lewdness) and 245.01 (Exposure of a Person) against female individuals who are simply exposing their breasts in public.  Therefore, members of the service are directed ***not*** to issue summonses, or take other enforcement action, against male or female individuals who are simply appearing in public unclothed above their waist."

125.    The FINEST message # 1435191 was required to be read to all NYPD police officers at ten consecutive roll calls.

### FIRST, SECOND AND THIRD CAUSES OF ACTION ARISING OUT OF ALL INCIDENTS ALLEGED ABOVE

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983/Fourth and Fourteenth Amendments
(Against the Police Officer Defendants, MTAPD Police Officer Matrisciano, and John Doe # 15)

126.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

127.    By reason of the foregoing, and by arresting plaintiff without probable cause, or failing to intervene to prevent this conduct, defendants deprived plaintiff of rights, remedies,

18

privileges, and immunities guaranteed to every citizen of the United States and secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from false arrest, false imprisonment, and/or malicious prosecution.

128.    By reason of the foregoing, defendants, acting intentionally, maliciously, and without justification or probable cause, caused accusatory instruments to be filed and otherwise brought criminal charges against plaintiff, who was repeatedly held in police custody on charges that were ultimately dismissed, or that the New York County District Attorney's Office declined to prosecute.

129.    The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, imprisonment, and prosecutions of plaintiff were carried out without valid warrants, without her consent, and without probable cause or reasonable suspicion.

130.    All forcible stops, arrests, detention, imprisonment, and prosecution occurred without any fault or provocation on the part of plaintiff.

131.    Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment as NYPD officers or MTAPD officers.  Defendants' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.  These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

132.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983
### (Against the Supervisory Defendants)

133.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

134.    The Supervisory Defendants were, at the relevant times, supervisory personnel within the NYPD, with oversight responsibility over the Police Officer Defendants.  They were responsible for the training, instruction, supervision and discipline of the Police Officer Defendants, who unlawfully stopped, detained, falsely arrested, and maliciously prosecuted plaintiff in violation of her constitutional rights, only because she was topless.

135.    Upon information and belief, the Supervisory Defendants were aware and well-informed of the Police Officer Defendants' unconstitutional conduct perpetrated against plaintiff, and of the specific need for training, instruction, and supervision regarding the state of the law with respect to toplessness in New York.

136.    The Supervisory Defendants had actual or constructive knowledge that the Police Officer Defendants were engaging in conduct that posed a pervasive and unreasonable threat to the constitutional rights of plaintiff.

137.    The Supervisory Defendants failed to protect plaintiff despite their knowledge that the Police Officer Defendants repeatedly violated her constitutional rights and posed a serious threat to the free exercise of her constitutionally protected rights.

138.    The response of the Supervisory Defendants to their knowledge of this threat was so inadequate as to show deliberate indifference or tacit approval of the conduct of the Police Officer Defendants.

139.    The failure of the Supervisory Defendants to supervise and discipline the Police

Officer Defendants amounted to gross negligence, deliberate indifference, and/or intentional

misconduct.

140.    As a direct and proximate result of the misconduct and abuse of authority detailed

above, plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
42 U.S.C. § 1983
(Against Defendant the City of New York)

141.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully

set forth at length herein.

142.    At all times material to this complaint, defendant the City of New York acting

through its police department, and through the individual defendants had *de facto* policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional

conduct alleged herein.

143.    At all times material to this complaint, defendant the City of New York, acting

through its police department, and through the individual defendants, had *de facto* policies,

practices, customs, and usages of failing to properly train, screen, supervise, or discipline

employees and police officers, and of failing to inform the individual defendants' supervisors of

their need to train, screen, supervise or discipline said defendants.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged

herein.

144.    At all times material to this complaint, defendant the City of New York, acting

through its police department, and through the individual defendants, had *de facto* policies,

practices, customs, and usages of encouraging and/or tacitly sanctioning the practice of charging

21

topless women with pretextual crimes and violations because they were topless and not because they were otherwise violating the law.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

145.    As a result of the foregoing, plaintiff was deprived of her liberty and property, suffered bodily injury, pain and suffering, mental suffering, costs and expenses, and was otherwise damaged and injured.

**FOURTH AND FIFTH CAUSES OF ACTION ARISING OUT OF
THE AUGUST 24, 2012 INCIDENT ONLY**

**FOURTH CAUSE OF ACTION**
False Arrest/Imprisonment
(Against Defendants John Doe # 13, John Doe # 14, and the City of New York)

146.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

147.    The acts and conduct of defendants John Doe # 13 and John Doe # 14 in wrongfully and illegally arresting and detaining plaintiff on August 24, 2012, and falsely charging her with disorderly conduct constitute false arrest and false imprisonment under the laws of the State of New York.

148.    Defendants Police Officer John Doe # 13, and John Doe # 14 intended to confine plaintiff and, in fact, confined plaintiff, and plaintiff was conscious of the confinement.  In addition, plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

149.    The wrongful, unjustifiable, and unlawful apprehensions, arrests and detentions of plaintiff were carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

150.    At all relevant times, defendants John Doe # 13 and John Doe # 14 acted forcibly in apprehending and arresting plaintiff.

151.    Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, and falsely charged.

152.    All this occurred without any fault or provocation on the part of Plaintiff.

153.    Defendants John Doe # 13 and John Doe # 14 were at all times agents, servants, and employees acting within the scope of their employment by the NYPD, which is therefore responsible for their conduct.

154.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
Negligent Hiring/Training/Discipline/Retention of Employment Services
(Against Defendant the City the New York)

155.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

156.    Defendant City of New York, through the NYPD, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances, a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

157.    Upon information and belief, defendant City of New York knew or should have known, through the exercise of reasonable diligence, that the Police Officer Defendants were likely to engage in the injurious unconstitutional conduct alleged above.

158.    Upon information and belief, defendant the City of New York's negligence in screening, hiring, training, disciplining, and retaining John Doe # 13 and # 14 proximately caused plaintiff's false arrest and other damages.

159.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court grant the following relief

jointly and severally against defendants:

(A)     Compensatory damages in an amount to be determined at trial;

(B)     Punitive damages against the Police Officer Defendants, defendant

Matrisciano, and defendant John Doe # 15 only, in an amount to be

determined at trial;

(C)     An Order awarding plaintiff reasonable attorneys' fees and costs

under 42 U.S.C. § 1988; and

(D)     Such other further relief as the Court may deem just and proper.

Dated: New York, New York
      May 15, 2013

EMERY CELLI BRINCKERHOFF &
ABADY LLP

By:_____
      Katherine Rosenfeld

75 Rockefeller Plaza, 20th Floor
New York, New York 10033
Tel.: 212-763-5000
Fax.: 212-763-5001

THE LAW OFFICE OF RONALD L.
KUBY

By:_____
      Ronald L. Kuby

119 West 23rd Street, Suite 900
New York, New York 10011
Tel.: 212-529-0223
Fax.: 212-529-0644

25